The State of Ohio, Appellee, *v.* Cutcher, Appellant.

(No. 28966—Decided February 13, 1969.)

*Mr. John T. Corrigan*, prosecuting attorney, and *Mr. Patrick G. Lazzaro*, for appellee.
*Mr. James J. Carroll*, for appellant.

Corrigan, J. The single question presented in this appeal on questions of law is whether the defendant, appellant herein, was denied due process of law by reason of

inadequate and ineffective representation by his counsel at his trial.

A jury in the Court of Common Pleas of Cuyahoga County found defendant guilty of the crimes of burglary, rape and sodomy committed during the night of August 20, 1966, upon the home and person of Mrs. Glenna Watson. Motion for new trial on his behalf was seasonably filed and overruled by the trial judge and the further claim of error is urged to us that the trial court abused its discretion by so refusing to grant a new trial for the reason of inadequate and ineffective representation of counsel during his trial.

The record shows that during the night in question the complainant, a divorcee, living in the upstairs suite of a two-family dwelling with her three minor children and a dog, went to bed at 1:00 a. m. She testified that she was awakened around 2:00 a. m. by the barking of her dog which was in the suite. She then saw a man walk by her bedroom door, turn off the living room light and come into her bedroom. She said he placed his hand over her mouth, told her to keep her eyes closed and not to make an outcry "because he wouldn't want to hurt anyone * * *," then had sexual intercourse with her, and finally compelled her to submit to fellatio with him.

Complainant testified that she got rid of the intruder by asking him to let the barking dog out of the apartment. The man obliged and was in the process of coaxing the dog to the stairway when she shoved him through the open doorway, and as he stumbled down the stairway she slammed the door shut. She immediately screamed for help and called the police.

Present counsel for defendant cites several instances in the course of the trial which he argues demonstrate inadequate and ineffective representation by the trial defense counsel. Pointed out in defendant's brief as a flagrant example is the following question and answer sequence occurring during trial counsel's direct examination of defendant:

"Q. I am going to show you a photo, and we will introduce it as Exhibit 1—

"The Court: Has it been marked? (Marked 'Defendant's Exhibit 1.')

"Q. Is that photo of you? A. Yes.

"Q. When was that photo taken? A. April 25, 1960.

"Q Will you tell the court what you can recall about that photo, and how it happened? A. Yes. The real reason I can't tell because you won't believe me, but I was charged with incest, assault and battery and, I think there was another charge, at this time, by a niece of mine, a sister of the girl that testified a while ago, and, at the same time, this niece that was in here a while ago, she, also, testified at that time, because, she told me, which I never found out until just—In fact, last week was the first she ever told me the reason she did say it was me was because her mother threatened to beat her, and, knowing her mother, I could easily believe that anybody else that knew her would easily believe it, too. But, anyway, I was tried for it, and we proved in court that it wasn't—I was found not guilty. That was the reason for that picture.

"Q. Were you dismissed in that action? A. Yes.

"The Court: Are you offering this exhibit in evidence?

"Defense counsel: Yes, your Honor.

"Prosecutor: We will stipulate, your Honor, that it may be entered in evidence.

"The Court: Let the record show that the exhibit is being shown to the jurors.

"Prosecutor: We have no objection, your Honor. (Thereupon defendant's Exhibit 1 was received in evidence.)

"* * *"

The magnanimity of the attorney representing the state in facilitating the reception into evidence of this damaging, prejudicial item of evidence is notably, if not nobly, impressive. Dissimilar from Virgil, defendant's trial counsel did not fear a worthy adversary, from Danaos or others, bearing gifts. It is clear that in Ohio and in

110

many other jurisdictions if the prosecutor had interrogated defendant about this prior indictment, such conduct would have represented reversible error. *Wagner* v. *State* (1926), 115 Ohio St. 136; *State* v. *Cole,* (1958) 107 Ohio App. 444; *Columbus* v. *Mercer* (1963), 118 Ohio App. 394; 15 Ohio Jurisprudence 2d 536-539, Criminal Law, Section 366; 23A Corpus Juris Secundum 183, Criminal Law, Section 1100. However, in fairness it must be added that any harm thereby to defendant's right to a fair trial with all his constitutional guarantees fully protected did not originate in the fecund mind of the alert prosecuting attorney but rather was contrived by defendant's trial counsel, and for whatever imagined tactical or strategic trial reason, it is impossible, from the record, to ken.

In effect, to further traumatize the impairment of defense effort occasioned solely by this flagrant instance of farcical inefficiency of trial counsel, the court in its general charge instructed the jury in part as to defendant's testimony as a witness:

"* * *.

"Any testimony presented with reference to the previous involvements of the Defendant in criminal matters is not to be considered by you as positive, as evidence or substantive evidence of the commission of this particular crime. It is only to be considered by you in connection with the determining the weight or credibility that you will attach to his testimony.

"* * *."

Obviously, the careful, cleansing instruction by the court in *State* v. *Witsel* (1944), 144 Ohio St. 190, is not present in the record of the case before us. Thus the prejudicial testimony in all probability remained in the minds of the jurors. The quoted part of the court's charge is neither correct nor proper in the light of the record. This testimony with reference to defendant's involvement in one previous criminal matter was presented to the jury by the defense on direct examination of defendant. Certainly, it could not have been the defense purpose to enter such evidence to lessen the weight thereof or to occlude the idea

of defendant's veracity. And even if such was the purpose, then it was inadmissible from either side, because defendant was exculpated. If there exisited another reason why such testimony was permitted, then the jury was in the dark about it.

It should be pointed out that this part of the court's general charge was probably correct in the context of another of defendant's criminal involvements relating to nonsupport of a minor child which was elicited on cross-examination by the state. However, the trial court did not separate and distinguish these portions of the evidence nor was such a request made by defendant's trial counsel. But again, the initial ineptitude was the creature of defendant's trial counsel's judgment to the detriment and prejudice of the defense, and anything subsequent which focused attention on the first gross error only compounded the latter.

Prior to examining the authorities on the constitutional requirements of "assistance of counsel" several other examples of trial counsel's questionable efficiency should be noted. The record reveals that trial counsel in his preliminary investigation apparently had understood the downstairs neighbors of complainant to have said that the man they saw departing from the scene of the crime on the night in question was not the defendant. At the trial, however, these witnesses on direct examination were emphatic in stating that they could not say whether the defendant was or was not the man. Then, trial counsel, although apparently not finished with his cross-examination of the complainant, dismissed her, subject to future recall. Later, in the course of the trial, counsel on two occasions attempted to recall the complainant for further questioning but she was not available. Trial counsel had neglected to issue a subpoena for her appearance and as a consequence she was not required to be present when he felt that she was further needed as a witness. Another unpracticed, maladroit blunder occurred during the cross-examination of the complainant when trial counsel asked a revolting, sickening query of this victim in reviewing the de-

tails of one of the acts she was forced to engage in during the attack, which question could have no possible effect except to inflame the members of the jury against him and his client. An objection to the query was sustained by the court but immediately the prosecutor withdrew his objection. There was no further comment by the court but the record shows that defendant's counsel asked the court for a recess "so that she can get her composure."

The rules defining competency of counsel have been delineated in many federal and state cases. *Powell* v. *Alabama* (1932), 287 U. S. 45, 77 L. Ed. 158, 53 S. Ct. 55, 84 A. L. R. 527; *Glasser* v. *U. S.* (1942), 315 U. S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *White* v. *Ragen* (1945), 324 U. S. 760, 764, 89 L. Ed. 1348, 65 S. Ct. 978; *Hawk* v. *Olson* (1945), 326 U. S. 271, 90 L. Ed. 61, 66 S. Ct. 116; *Michel* v. *Louisiana* (1955), 350 U. S. 91, 100 L. Ed. 83, 76 S. Ct. 158; *United States, ex rel. Feeley,* v. *Ragan* (C. A. 7th Ill. 1948), 166 F. 2d 976; *Tompsett* v. *Ohio* (C. A. 6th Ohio 1944), 146 F. 2d 95; *Schaber* v. *Maxwell* (C. A. 6th Ohio 1965), 348 F. 2d 664; *Cornwell* v. *State* (1922), 106 Ohio St. 626; *Sopko* v. *Maxwell* (1965), 3 Ohio St. 2d 123; *Jackson* v. *Maxwell* (1962), 174 Ohio St. 32; *Kramer* v. *Alvis* (1956), 103 Ohio App. 324; *People* v. *Ibarra* (1963), 34 Cal. Rptr. 863, 386 P. 2d 487 (S. Ct. of Calif.); *Shack* v. *State* (1967), 231 N. E. 2d 36 (S. Ct. Ind.). Also, see cases cited in 74 A. L. R. 2d 1390 (1957) and in 59 Northwestern University Law Review 289 (1964). As stated by plaintiff in his brief, there are no Ohio cases directly supporting defendant's position. On the other hand, none of the Ohio courts which have dealt with the question has found facts to support the argument. In *Jackson* v. *Maxwell, supra,* cited by appellee, the court refused to consider the contention on a habeas corpus petition. In *Sopko* v. *Maxwell, supra,* the court easily answered all the allegations of incompetence, none of which, incidentally, was of the magnitude of the error in the case at bar. Likewise, in *Kramer* v. *Alvis, supra,* the Court of Appeals for Franklin County carefully considered the many allegations of incompetence of trial counsel and found adversely to petitioner.

In *Cornwell* v. *State, supra,* defendant's employed counsel and assigned counsel wrangled in the presence of the jury to the point that their mutual client could not determine whose advice to accept and the Supreme Court of Ohio held that the defendant was prejudiced by the advice of his counsel to such an extent that he was deprived of a fair trial.

A 1965 federal case, *Schaber* v. *Maxwell, supra,* quotes with approval several general rules on ineffective counsel laid down in the following cases:

*Scott* v. *U. S.,* 334 F. 2d 72 (C. A. 6th 1964):

"Only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking the conscience of the court, can a charge of inadequate legal representation prevail. The fact that a different or better result may have been obtained by a different lawyer does not mean that the defendant has not had the effective assistance of counsel."

*MacKenna* v. *Ellis,* 280 F. 2d 592 (C. A. 5th 1960):

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance."

*Poe* v. *United States,* 233 F. Supp. 173 (D. C. 1964):

"The failure to inform petitioner of the applicable law deprived him of a fair trial. Where the defense *is substantially weakened because of the unawareness on the part of defense counsel of a rule of law basic to the case,* the accused is not given the effective representation guaranteed him by the Constitution."

In the oft-cited case of *People* v. *Ibarra* (1963), 34 Cal. Repr. 863, 386 P. 2d 487, Justice Traynor of the California Supreme Court held that the failure of defendant's attorney to object to the admission at trial of illegally obtained evidence deprived defendant of a fair trial. The opinion reads at pages 866-867:

"To justify relief on this ground, 'an extreme case must be disclosed.' * * * It must appear that counsel's lack of diligence or competence reduced the trial to a 'farce or a sham.' * * * It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.

"* * *

"Counsel's failure to research the applicable law precluded the exercise of judgment on his part and deprived defendant of an adjudication of what was clearly the stronger of the two defenses available to him * * *. Counsel's statement to the court makes perfectly clear that his decision reflected, not judgment, but unawareness of a rule of law basic to the case; a rule that reasonable preparation would have revealed. Counsel's failure to object precluded resolution of the crucial factual issues supporting defendant's primary defense. It thereby reduced his trial to a farce and a sham.''

In the case of *Blincoe* v. *State* (1962), 243 Ind. 387, 185 N. E. 2d 729, the Supreme Court of Indiana wrote:

"We have also repeatedly held that there can be no valid trial of a criminal case unless the defendant is adequately defended by competent counsel * * *.''

Despite assertions of the plaintiff in its brief to the contrary, the evidence supporting defendant's guilt in this case is far from overwhelming. The verdict rests solely on complainant's identification of him as her assailant. The record shows certain discrepancies in her identification of defendant as well as her poor reputation for truth and veracity. In that state of the record the bungling of defendant's trial attorney could do naught but prejudice defendant.

Under the Sixth Amendment of the United States Constitution a defendant in all criminal prosecutions is entitled "to have the assistance of counsel for his defence.'' This right to the assistance of counsel has been made obligatory upon the states by the Fourteenth Amendment of

the United States Constitution. It is our view and we so hold that assistance of counsel under the Sixth Amendment implies adequate representation by efficient counsel. Efficiency of counsel in a criminal trial implies skill and preparation in endeavoring to produce the desired result. Such legal representation, as demonstrated by the record before us in this appeal, was not provided to this defendant, in his trial, thereby reducing his trial to a farce. For the reasons stated, defendant's substantial rights were prejudiced by his trial counsel's errors so as to deprive him of his constitutional rights of due process of law and of the effective assistance of counsel as guaranteed to him by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and by Sections 10 and 16 of Article I of the Constitution of the state of Ohio.

Accordingly, the judgment of the court below must be and the same is hereby reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

SILBERT, P. J., and CANARY, J., concur.