Andre D. JOHNSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S00–9310–CR–1196.

Supreme Court of Indiana.

July 21, 1995.

Edward C. Hilgendorf, South Bend, for appellant.

Pamela Carter, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

ON DIRECT APPEAL

SELBY, Justice.

On appeal is the sole issue of whether the trial court erred in determining that independent evidence established the corpus delicti for robbery and that evidence of extrajudicial confessions by the defendant was thereby admissible. We affirm.

I.

Seventy-four year old Florence Hoke called her niece, Nancy Whiteman, at 8:30 a.m. on April 10, 1990, and told Whiteman that she was going to get license plates for her car. At 12:30 p.m., Whiteman called Hoke twice, but Hoke did not recognize her. Whiteman went to Hoke's apartment, where she discovered Hoke sitting in a chair holding her head. Whiteman called "911." [R. 233] Richard Bourdon, a paramedic, arrived and observed that Hoke was disoriented and unable to communicate. He observed a small bruise and a bump on the back of Hoke's head. At the hospital later that day, Whiteman observed bruises on Hoke's knees and on one elbow.

Hoke was diagnosed as suffering a subdural hematoma, "a collection of blood that forms under the external cover of the brain." The treating physician testified that subdural

hematomas are caused by trauma, which could result from "a blow to the head, a fall, [or] any type of force." Doctors performed a craniotomy, but Hoke never regained consciousness, and died approximately two months later from pneumonia and infection. Hoke's new license plates were found in her apartment, but her purse was missing. A leather bow resembling one that was on Hoke's purse was found on the ground near where Hoke's car was parked.

On April 10, 1990, Margaret Jackson resided with Homer Frison. Andre D. Johnson visited that morning and left with Frison. The two told Jackson that when they returned they "would either have some money or would have a way of making some money." When Frison and Johnson later met up with Jackson, they had a purse and a wallet containing credit cards belonging to Hoke. The trio went shopping, Jackson purchased cigarettes with the credit cards, and the trio sold the cigarettes to obtain money to purchase drugs.

Following a jury trial, Johnson was convicted of robbery, a Class A felony, and of being an habitual offender. The trial court sentenced Johnson to fifty years for the robbery conviction, to be served concurrently with the sentence imposed for an unrelated offense. For the habitual offender conviction, the trial court sentenced Johnson to twenty-five years, to be served consecutive to the robbery sentence.

## II.

■ At issue in this case is whether the trial court erred in admitting the testimony of four witnesses, Odie Miller, Anthony Taylor, Darrell Vaughn, and Detective Sergeant Michael Swanson, regarding confessions made by Johnson. A defendant's extrajudicial confession may be introduced into evidence only if the State establishes the corpus delicti of the crime by independent evidence. *Willoughby v. State* (1990), Ind., 552 N.E.2d 462, 466. Corpus delicti consists of a showing of "1) the occurrence of the specific kind of injury and 2) someone's criminal act as the cause of the injury." [1] *Id.*

In particular, at trial Miller responded to the question "what did [Johnson] tell you about Florence Hoke?" by stating that Johnson had told Miller that "he and Homer were trying to find a way to get some money to buy some drugs and that they came around the corner and they seen [Hoke] walking down the sidewalk and they got out of the car to snatch her purse and she fell and he said a couple of months later that he read in the newspaper" that Hoke had died. [R. 384–85]

Taylor testified that he and Johnson were watching a "Crime Stoppers" show featuring an elderly woman being robbed of her purse. Taylor testified that Johnson told him "that what was on T.V., that he had done with someone else." Specifically, Taylor claimed that Johnson said that he and Frison were near the mall, that they saw a lady, and that he jumped out of a car. "He ran towards the lady and when he tried to get the purse from her, she struggled and then that's when he hit her with a forearm and from that point, the other individual came up and took the purse and they fled the scene." [R. 409–10]

Vaughn testified that Johnson confided in him that he and Frison "snatched" an elderly woman's purse, and that the woman was in the hospital. Johnson allegedly said that it went "kind of crazy" because "the old lady tried to hold on and Homer hit her—not Homer—Johnson hit her." [R. 439] Detective Sergeant Swanson testified that he interrogated Johnson as part of his investigation into the Hoke case. Johnson told him that he would not "go on tape. I will talk to you and I will just tell you that Homer and I did it." Detective Sergeant Swanson also testified that Johnson stated "Homer and I had did it and you guys can't prove it anyway." [R. 469]

As Johnson virtually concedes, the corpus delicti for the crime of theft exists based

---

**1.** This rule is designed to "reduce the risk of convicting a defendant based on his confession for a crime that did not occur," prevent coercive interrogation tactics, and encourage thorough criminal investigations. *Willoughby,* 552 N.E.2d at 466. We previously observed, however, that the rule's efficacy in meeting these objectives has been seriously questioned. *Id.; see generally* 1 *McCormick on Evidence* § 145, at 563 (John W. Strong, 4th ed. 1992).

upon Johnson's possession of Hoke's purse, wallet, and credit cards. Johnson contends, however, that no corpus delicti exists for the crime which he was convicted of, namely, robbery.[2] Essentially he argues that the independent evidence does not adequately demonstrate that someone took Hoke's purse by force or threat of force or by putting Hoke in fear. Regarding Hoke's physical injuries, Johnson argues that it is possible that Hoke fell by accident, thus causing the subdural hematoma and other bruises.[3]

■■■ We have held that "[t]he independent evidence need not be shown beyond a reasonable doubt nor demonstrate prima facie proof as to each element of the charged offense, but must support an inference that the crime was committed." *Willoughby*, 552 N.E.2d at 467. In this case, the evidence does not conclusively establish that Hoke's purse was taken forcibly from her. The evidence does, however, support an *inference* that she was robbed.[4] We specifically reject Johnson's contention on appeal that "[t]here is no evidence here of violent injury."

In the most analogous Indiana case, the defendant was convicted of murder committed during the commission of a "purse-grab" robbery of an eighty-two-year-old woman. *Hayden v. State* (1964), 245 Ind. 591, 199 N.E.2d 102, *cert. denied*, 384 U.S. 1013, 86 S.Ct. 1926, 16 L.Ed.2d 1034 (1966). The victim was found lying on the ground near her apartment with blood flowing from her mouth, ears, and nose. *Id.* at 596, 199 N.E.2d 102. This Court noted that the victim's "body had many marks of violence upon it. Evidence from police and medical authorities indicated that the victim *could have* been assailed and pushed against the door of the apartment building, thus causing the injuries and marks of violence. The woman later died of these injuries." *Id.* at 596–97, 199 N.E.2d 102. Additional independent evidence showed that the victim had a purse with money and personal items on her person prior to the alleged attack, and that the purse, without the money, was later found in a nearby alley. *Id.* at 597, 199 N.E.2d 102. We determined that because ordinary people "might reasonably conclude that the deceased did not die of natural causes and that the injuries from which she died were inflicted in the course of a robbery," the corpus delicti for a robbery-murder charge existed. *Id.* at 597, 199 N.E.2d 102. Significantly, the evidence in *Hayden* tended only to show that the victim "could have" been assailed, not that her injuries could have only been caused by force exerted during a robbery. Even though, as in *Hayden*, the independent evidence here does not conclusively establish the cause of Hoke's injuries, this does not preclude a corpus delicti for robbery since a reasonable person could conclude that Hoke's injuries were the product of a robbery.

Johnson's reliance upon *Parker v. State* (1949), 228 Ind. 1, 88 N.E.2d 556, is misplaced. In that case this Court reversed the defendant's conviction for murder in the second degree based upon the absence of corpus delicti. Parker confessed to killing the al-

---

**2.** By statute,

A person who knowingly or intentionally takes property from another person or from the presence of another person:
(1) by using or threatening the use of force on any person; or
(2) by putting any person in fear;
commits robbery, a Class C felony. However, the offense is a Class B felony if it is committed while armed with a deadly weapon or results in bodily injury to any person other than a defendant, and a Class A felony if it results in serious bodily injury to any person other than a defendant.

Ind.Code Ann. § 35–42–5–1 (West 1986).

**3.** Johnson observes that Hoke "could have slipped or tripped or lost her balance. She could have fallen on the stairs or on the sidewalk or at the license bureau or in the parking lot getting into or out of her car." Additionally Johnson points out that it is possible that Hoke did not sustain the head trauma and the bruises contemporaneously.

**4.** The independent evidence supporting the corpus delicti need not preclude every possible explanation of the circumstances. For example, one court held that a corpus delicti for attempted armed robbery existed when evidence showed that a person was shot to death at 1 a.m. and that the shooter fled, even though other explanations such as a dispute between the two persons were possible, since the independent evidence "sufficiently corroborated the defendant's confession of attempted armed robbery." *People v. Montes*, 192 Ill.App.3d 874, 140 Ill.Dec. 49, 54, 549 N.E.2d 700, 705 (1989).

leged victim, dismembering her, and burying her in three different places. *Id.* at 5, 88 N.E.2d 556. Police discovered human remains in the places designated, but could not identify the remains as the missing person's or determine the cause of death. *Id.* at 10, 88 N.E.2d 556. As such, the only evidence that the alleged victim had been murdered aside from Parker's extrajudicial confession was the alleged victim's disappearance. *Id.* This Court deemed the independent evidence insufficient to establish the corpus delicti for murder. *Id.*

*Parker* is wholly different from the instant case because here evidence identifies Hoke as the victim of theft and demonstrates that Hoke incurred injuries caused by force. Whether Johnson caused the injuries or another force was at work is a question different in kind and degree than whether unidentifiable human remains adequately prove that a particular missing person was murdered.

We thus reject Johnson's argument that the State failed to prove the corpus delicti and that the trial court erred in admitting the testimony of Miller, Taylor, Vaughn, and Swanson into evidence. We affirm the judgment of the trial court.

SHEPARD, C.J., and DeBRULER, DICKSON and SULLIVAN, JJ., concur.